## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

MORGAN ALLEN and AARON
DILLARD,

                Plaintiffs,

v.

WAWONA PACKING CO., LLC
a California limited liability company, and
ALDI, Inc.

                Defendants.

Case No.: 0:22−cv−01515−NEB−BRT

**AMENDED COMPLAINT**

Jury Trial Demanded

---

COME NOW the Plaintiffs, Aaron Dillard and Morgan Allen by and through their attorneys of record OFT Law PLLC, to assert claims against Wawona Packing Co., LLC (hereinafter "Wawona" ) and Aldi, Inc. (hereinafter "Aldi") and allege as follows:

### NATURE OF THE ACTION

1.      This case arises out of a large multistate outbreak of *Salmonella* Enteritidis caused by peaches produced and sold by Defendant Wawona that sickened Plaintiffs.

2.      As a result of consuming the contaminated peaches produced by Defendant Wawona and later sold to Plaintiffs by Defendant Aldi, Plaintiffs contracted severe *Salmonella* infections, requiring hospitalization and resulting in significant injuries.

### THE PARTIES

3.      Plaintiff Morgan Allen is a resident of Minneapolis, Minnesota.  Plaintiff Morgan Allen is therefore a resident of the State of Minnesota.

1

4.      Plaintiff Aaron Dillard resides in Saint Louis Park, Minnesota.  Plaintiff Aaron Dillard is therefore a resident of the State of Minnesota.

5.      Defendant Wawona Packing Co. LLC is a California limited liability company with its principal place of business and corporate headquarters located in Fresno, California.  Defendant is therefore a citizen of the State of California.

6.      Defendant Wawona's California Agent for Service is Eric Beringause, 7700 N. Palm Avenue, Suite 206, Fresno, California 93711.

7.      Upon information and belief, Defendant Wawona also does business under the assumed name "Prima Wawona."

8.      Defendant Wawona is in the business of producing, processing, packaging and distributing fresh fruit products, including into the State of Minnesota.

9.      Defendant Aldi Inc. is an Illinois Corporation headquartered in Batavia, Illinois.

10.      Defendant Aldi's Agent for Service is Meredith Oliva, 1200 N. Kirk Road, Batavia, Illinois 60510.

11.      Defendant Aldi operates a nationwide chain of grocery stores, including stores located in Minnesota, under the ALDI brand name.

12.      Upon information and belief, Defendant Aldi owns, operates and controls the Aldi supermarket located in Dundas, Minnesota that sold Plaintiffs peaches contaminated with *Salmonella.*

## JURISDICTION AND VENUE

13.     This court has jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00) and the parties are citizens of different states.

14.     Venue of this matter is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim set forth herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *Salmonella* and Food Safety

15.     *Salmonella* is a bacterium that occurs in humans and other animals and is shed in their feces.

16.     When *Salmonella* is ingested by humans it can cause severe gastroenteritis called salmonellosis. Symptoms of salmonellosis include nausea, vomiting, diarrhea, and abdominal pain. Headache, myalgia, and low-grade fever may also accompany salmonellosis.

17.     Symptoms typically develop within 6 to 72 hours after ingesting contaminated food or water. Symptoms usually last for several days but severe cases can last much longer and result in serious medical complications.

18.     Long-term health issues in individuals who suffer from salmonellosis are well-documented and include reactive arthritis, inflammatory bowel syndrome, and immunological deficiencies.

3

19.     Children, the elderly, and people with compromised immune systems are particularly susceptible to serious illness and death.

20.     In partnership with state health departments, the Centers for Disease Control and Prevention ("CDC") actively monitors *Salmonella* cases throughout the country to identify outbreaks. Using sophisticated genetic typing technology known as Pulse Field Gel Electrophoresis (PFGE) and Whole Genome Sequencing (WGS), the CDC can detect when multiple *Salmonella* infections are caused by a genetically related strain of the bacteria. Public health investigators then use this data and interviews to pinpoint the source of a particular outbreak.

21.     Because of the well-known risks to human health posed by *Salmonella* bacteria, responsible food manufacturers take steps to prevent contamination of their food products and processing environments and to actively monitor the safety of their products.

22.     Fresh fruit presents a particular risk of microbial growth when inappropriately processed, packaged, stored, or handled because it can support the growth of bacteria and is a ready-to-eat product that does not typically undergo a kill-step like cooking prior to consumption.

23.     Responsible fresh fruit producers therefore must address food safety at every step of production, from farm to fork.

24.     In fact, as early as 1998, the Food and Drug Administration (FDA) published a guidance document to industry entitled "Draft Guide to Minimize Microbial Food Safety Hazards for Fresh Fruits and Vegetables."

25.    More recently, in 2015, FDA published the Produce Safety Rule as part of the implementation of the Food Safety Modernization Act.

26.    Following the Produce Safety Rule, FDA published a new guidance document entitled "Draft Guidance for Industry:  Standards for the Growing, Harvesting, Packing, and Holding of produce for Human Consumption."

27.    This guidance document spells out the risks posed by fresh fruit and sets minimum sanitation standards:

> Produce is usually grown outdoors in soil, with influences from weather and other environmental factors, and often does not receive treatment after harvesting that adequately removes pathogens that can cause human illness (referred to in this draft guidance as microorganisms of public health significance). Therefore, we place emphasis on preventive measures throughout growing, harvesting, packing, and holding produce to reduce the incidence of contamination of produce that can lead to foodborne illness.

28.    In short, the risk of pathogenic contamination of fresh fruit was well known in the industry and responsible producers should implement and verify robust food safety programs.

### *Salmonella* Outbreaks and Investigation

29.    In Minnesota, *Salmonella* is classified as a reportable disease under Minn. R. 4605.7040 (B)(43).

30.    Because *Salmonella* is a reportable disease, when a person in Minnesota tests positive for the bacteria, the person's health care providers are required to relay that positive test result to the Minnesota Department of Health (MDH) within one working day using the Enteric Disease Reporting Form.

31.     MDH is required to investigate cases of reportable diseases, including *Salmonella,* "for the purpose of verification of the existence of disease, ascertaining the source of the disease causing agent, identifying unreported cases… and informing the public if necessary." Minn. R. 4605.7500. Unusual case incidence, including "any pattern of cases" or "increased incidence… which may indicate … an outbreak" calls for increased attention and an immediate telephone report to MDH, and laboratories must submit test results and clinical materials for cases and suspected cases upon request. Minn. R. 4605.7050.

32.     According to the MDH, outbreaks can be "detected through routine surveillance activities that include interviewing all persons who are diagnosed with a reportable disease" like *Salmonella.* "[W]hen multiple cases report a common exposure, such as eating a common food item" MDH initiates an investigation.

33.     At the national level, the CDC conducts the same type of reportable disease surveillance and outbreak detection and investigation.

34.     According to the CDC, "If a larger number of people than expected appear to have the same illness in a given time period and area, it's called a cluster. When an investigation shows that ill people in a cluster have something in common to explain why they all got the same illness, the group of illnesses is called an outbreak."

35.     When the CDC detects a foodborne disease outbreak, investigators work to collect three types of data: epidemiologic data, traceback data, and food and environmental testing data. This information helps health officials pinpoint the source of the outbreak.

36.     Epidemiologic data includes "[p]atterns in the geographic distribution of illnesses, the time periods when people got sick, and past outbreaks involving the same germ," "[f]oods or other exposures occurring more often in sick people than expected," and "clusters of unrelated sick people who ate at the same restaurant, shopped at the same grocery store, or attended the same event," according to the CDC.

37.     Traceback data includes a "common point of contamination in the distribution chain, identified by reviewing records collected from … stores where sick people ate or shopped," and "[f]indings of environmental assessments in food production facilities, farms, and restaurants identifying food safety risks."

38.     Food and environmental testing data includes: "The germ that caused illness found in a food item collected from a sick person's home, a retail location, or in the food production environment" and "[t]he same DNA fingerprint linking germs found in foods or production environments to germs found in sick people."

39.     "When investigating outbreaks of infectious disease, public health investigators sometimes find that the way people get sick involves a commercial entity (e.g., a store or restaurant they patronized), an institution or company (e.g., a hotel or hospital they stayed at), or a particular product they bought. CDC has a long-standing practice of regularly disclosing names of commercial entities implicated in infectious disease outbreaks in order to protect public health. … Once a specific source is implicated in an infectious disease outbreak, CDC routinely provides information during an ongoing investigation if there are actions that individuals can take to protect their health. When an

7

outbreak is over and the investigation has been completed, CDC usually provides specific information when there is conclusive evidence regarding the root cause of contamination."

### Outbreak of *Salmonella* Enteritidis

40.     In early July of 2020, the CDC detected clusters of illnesses all caused by *Salmonella* Enteritidis.

41.     Soon, WGS analysis of samples obtained from sick individuals from these clusters confirmed that they were all sickened by a genetically distinct strain of *Salmonella* Enteritidis, indicating a common food source for the illnesses.

42.     Initial epidemiologic and traceback evidence collected by public health investigators, including those at the Minnesota Department of Health (MDH), indicated that bagged peaches supplied by Defendant Wawona and sold mainly at Aldi grocery stores were the source of the illnesses.

43.     The implicated product is depicted below:



44.     The CDC reported 101 illnesses across 17 states of people infected with the outbreak strain of *Salmonella* Enteritidis linked to Defendant's peaches.

45.     The illnesses identified includes 28 hospitalizations.

46.     Recognizing that Defendant's peaches caused human illnesses and in an effort to protect its customers, Aldi initiated a recall on August 19, 2020, of all peaches received from Defendant Wawona.

47.     Aldi's recall included the following products:

| Product | Packaging | UPC Code | Select Stores in These Affected States |
|---|---|---|---|
| Wawona Peaches 2 lb. | 2 lb. bag | 033383322001 | Connecticut, Florida, Illinois, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, North Dakota, New Hampshire, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Virginia, Wisconsin and West Virginia |
| Peaches Organic 2 lb. | 2 lb. bag | 849315000400 | Connecticut, Illinois, Iowa, Massachusetts, Michigan, Minnesota, North Dakota, New Hampshire, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Wisconsin and West Virginia |



*Pictured: Peaches Organic 2 lb.*



*Pictured: Wawona Peaches 2 lb.*

48. On August 21, 2020, Defendant Wawona, acting under the Prima Wawona name, recalled a variety of bagged peaches for potential *Salmonella* contamination. Peaches associated with the August 21, 2020, recall were sold under the Wawona, Prima, Marketside, Kroger, and Wegmans brand names throughout 34 states.

49. The next day, Prima Wawona expanded the recall to include bulk/loose peaches.

50. The FDA final report on the Wawona peach *Salmonella* outbreak linked the outbreak to several animal growing areas close to the farm where the recalled peaches were grown.

**Plaintiff Allen's *Salmonella* Infection**

51.     On July 14, 2020, Plaintiffs purchased a bag of peaches produced and sold by Defendant Wawona from an Aldi grocery store in Dundas, Minnesota.

52.     After letting the peaches ripen for a few days, Plaintiffs began consuming the peaches regularly.

53.     Within days of consumption, on July 20, 2020, Plaintiff Allen began experiencing nausea, fatigue, loss of appetite, stomach pain. Soon after onset, she also started having diarrhea.

54.     As her symptoms worsened, Plaintiff Allen presented to the emergency department at Northfield Hospital on July 21, 2020. Providers took blood and urine samples, and also performed a CT scan before admitting Plaintiff Allen.

55.     Plaintiff was discharged on July 22, 2020.

56.     Plaintiff Allen's stool sample taken at the hospital returned a positive result for *Salmonella.*

57.     After its epidemiological and microbiological investigation, the Minnesota Department of Health linked Plaintiff Allen's *Salmonella* infection to the outbreak caused by Defendant.

58.     As a direct and proximate result of consuming contaminated peaches manufactured and sold by Defendant, Plaintiff Allen suffered a debilitating and painful gastrointestinal illness; incurred medical expenses and lost wages; and suffered other losses and damages as proved at trial.

## Plaintiff Dillard's *Salmonella* Infection

59.     On July 14, 2020, Plaintiffs purchased a bag of peaches produced and sold by Defendant Wawona from an Aldi grocery store in Dundas, Minnesota.

60.     After letting the peaches ripen for a few days, Plaintiffs began consuming the peaches regularly.

61.     On the day Plaintiff Allen was discharged from the hospital, Plaintiff Dillard also began feeling unwell, starting with an urge to vomit, followed by body aches and diarrhea.

62.     After two days of excruciating pain, vomiting, and urgent bowel movements, Plaintiff Dillard presented to Northwest Family Clinic, where he was given ondansetron to alleviate nausea and given stool sample collection kits to be returned at a later time. The physician assistant at Northwest Family Clinic recommended that Plaintiff Dillard not begin his new job on July 27, 2020.

63.     When his symptoms did not improve, Plaintiff Dillard presented to the emergency room at North Memorial Medical Center. There, a stool sample taken revealed that Plaintiff Dillard had *Salmonella*.

64.     Plaintiff Dillard presented to Broadway Family Medicine on July 30, 2020, for follow up care, reporting ongoing GI complaints and night sweats.

65.     As a result of his prolonged illness, Plaintiff Dillard had to push back the start date of his new job nearly one month, incurring lost wages.

66.     After its epidemiological and microbiological investigation, the Minnesota Department of Health linked Plaintiff Dillard's *Salmonella* infection to the outbreak caused by Defendant's peaches.

67.     As a direct and proximate result of consuming contaminated peaches manufactured and sold by Defendant, Plaintiff Dillard suffered a debilitating and painful gastrointestinal illness; incurred medical expenses and lost wages; and suffered other losses and damages as proved at trial.

<u>**COUNT I**</u>
**Strict Product Liability – Plaintiff Allen v. Defendant Wawona**

68.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

69.     Defendant Wawona produced, processed, packaged, manufactured, marketed, and sold the contaminated peaches that caused Plaintiff Allen's *Salmonella* infection.

70.     The peaches produced by Defendant and consumed by Plaintiff Allen were contaminated with *Salmonella* and therefore defective when they left the control of Defendant Wawona.

71.     Plaintiff Allen consumed the contaminated peaches as intended by Defendant Wawona.

72.     Plaintiff Allen's consumption of the contaminated peaches caused her to become infected with the *Salmonella* bacteria and to become very ill.

73.     *Salmonella* is a dangerous and potentially deadly pathogen.

74.     Because *Salmonella* is colorless and odorless, consumers like Plaintiff Allen have no way of detecting the contamination before consumption.

75.     The peaches produced by Defendant and subsequently purchased and consumed by Plaintiff Allen were contaminated with *Salmonella* and therefore unreasonably dangerous to ordinary consumers for the intended use of the product.

76.     Defendant is therefore strictly liable to Plaintiff Allen for the harm proximately caused by its production and sale of contaminated peaches.

77.     As a direct and proximate result of Defendant's production and sale of defectively manufactured peaches, Plaintiff Allen suffered the damages and losses as set forth in this Complaint.

## COUNT II
### Negligence – Plaintiff Allen v. Defendant Wawona

78.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

79.     Defendant Wawona manufactured, supplied, marketed, and sold the peaches purchased and consumed by Plaintiff Allen.

80.     Defendant Wawona was negligent in and about its manufacturing, supplying, marketing, and sale of the adulterated peaches that caused the *Salmonella* outbreak.

81.     Defendant Wawona owed a duty to the intended customers of its peach products, including Plaintiff Allen, to ensure that its products were free of dangerous pathogens, including *Salmonella*.

14

82.     Defendant Wawona breached this duty by the following acts and omission, among others:

    a.  Failing to implement and follow Good Agricultural Practices (GAPs);

    b.  Inadequately selecting screening, and monitoring the suppliers of peaches used in its products;

    c.  Inadequately maintaining and monitoring the safety of its products, premises, equipment and employees;

    d.  Failing to properly operate its growing; production, and distribution facilities in a safe, clean and sanitary manner;

    e.  Failing to adopt, implement, follow and verify adequate food safety policies and procedures that met industry standards for the safe and sanitary production of fresh peaches;

    f.  Failing to properly train its employees and agents to:  prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance;

    g.  Failing to adequately supervise its employees and agents, including growers, to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance; and

    h.  Other acts and omissions as revealed through investigation and discovery.

83.     As a direct and proximate result of Defendant Wawona's negligence, Plaintiff Allen suffered the damages and losses as set forth in this Complaint.

## COUNT III
**Strict Product Liability – Plaintiff Dillard v. Defendant Wawona**

84.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

85.     Defendant Wawona produced, processed, packaged, manufactured, marketed, and sold the contaminated peaches that caused Plaintiff Dillard's *Salmonella* infection.

86.     The peaches produced by Defendant and consumed Plaintiff Dillard were contaminated with *Salmonella* and therefore defective when they left the control of Defendant Wawona.

87.     Plaintiff Dillard consumed the contaminated peaches as intended by Defendant Wawona.

88.     Plaintiff Dillard's consumption of the contaminated peaches caused her to become infected with the *Salmonella* bacteria and to become very ill.

89.     *Salmonella* is a dangerous and potentially deadly pathogen.

90.     Because *Salmonella* is colorless and odorless, consumers like Plaintiff Dillard have no way of detecting the contamination before consumption.

91.     The peaches produced by Defendant and subsequently purchased and consumed by Plaintiff Dillard were contaminated with *Salmonella* and therefore unreasonably dangerous to ordinary consumers for the intended use of the product.

92.     Defendant is therefore strictly liable to Plaintiff Dillard for the harm proximately caused by its production and sale of contaminated peaches.

93.     As a direct and proximate result of Defendant's production and sale of defectively manufactured peaches, Plaintiff Dillard suffered the damages and losses as set forth in this Complaint.

## COUNT IV
### Negligence – Plaintiff Dillard v. Defendant Wawona

94.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

95.     Defendant Wawona manufactured, supplied, marketed, and sold the peaches purchased and consumed by Plaintiff Dillard.

96.     Defendant Wawona was negligent in and about its manufacturing, supplying, marketing, and sale of the adulterated peaches that caused the *Salmonella* outbreak.

97.     Defendant Wawona owed a duty to the intended customers of its peach products, including Plaintiff Dillard, to ensure that its products were free of dangerous pathogens, including *Salmonella*.

98.     Defendant Wawona breached this duty by the following acts and omission, among others:

   a.   Failing to implement and follow Good Agricultural Practices (GAPs);

   b.   Inadequately selecting screening, and monitoring the suppliers of peaches used in its products;

   c.   Inadequately maintaining and monitoring the safety of its products, premises, equipment and employees;

17

    d.   Failing to properly operate its growing; production, and distribution facilities in a safe, clean and sanitary manner;

    e.   Failing to adopt, implement, follow and verify adequate food safety policies and procedures that met industry standards for the safe and sanitary production of fresh peaches;

    f.   Failing to properly train its employees and agents to:  prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance;

    g.   Failing to adequately supervise its employees and agents, including growers, to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance; and

    h.   Other acts and omissions as revealed through investigation and discovery.

99.    As a direct and proximate result of Defendant Wawona's negligence, Plaintiff Dillard suffered the damages and losses as set forth in this Complaint.

## COUNT V
### Strict Product Liability – Plaintiff Allen v. Defendant Aldi

100.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

101.    Defendant Aldi processed, marketed, and sold the contaminated peaches that caused Plaintiff Allen's *Salmonella* infection.

102.   The peaches sold by Defendant Aldi and consumed Plaintiff Allen were contaminated with *Salmonella* and therefore defective when they left the control of Defendant Aldi.

103.   Plaintiff Allen consumed the contaminated peaches as intended by Defendant Aldi.

104.   Plaintiff Allen's consumption of the contaminated peaches caused her to become infected with the *Salmonella* bacteria and to become very ill.

105.   *Salmonella* is a dangerous and potentially deadly pathogen.

106.   Because *Salmonella* is colorless and odorless, consumers like Plaintiff Allen have no way of detecting the contamination before consumption.

107.   The peaches sold by Defendant Aldi and subsequently purchased and consumed by Plaintiff Allen were contaminated with *Salmonella* and therefore unreasonably dangerous to ordinary consumers for the intended use of the product.

108.   Defendant Aldi is therefore strictly liable to Plaintiff Allen for the harm proximately caused by its production and sale of contaminated peaches.

109.   As a direct and proximate result of Defendant Aldi's production and sale of defectively manufactured peaches, Plaintiff Allen suffered the damages and losses as set forth in this Complaint.

### COUNT VI
### Negligence – Plaintiff Allen v. Defendant Aldi

110.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

111. Defendant Aldi supplied, marketed, and sold the peaches purchased and consumed by Plaintiff Allen.

112. Defendant Aldi was negligent in and about its supplying, storage, marketing, and sale of the adulterated peaches that caused the *Salmonella* outbreak.

113. Defendant Aldi owed a duty to the intended customers of its peach products, including Plaintiff Allen, to ensure that its products were free of dangerous pathogens, including *Salmonella*.

114. Defendant Aldi breached this duty by the following acts and omission, among others:

a. Inadequately selecting screening, and monitoring the suppliers of peaches used in its products;

b. Inadequately maintaining and monitoring the safety of its products, premises, equipment and employees;

c. Failing to properly operate its distribution facilities in a safe, clean and sanitary manner;

d. Failing to adopt, implement, follow and verify adequate food safety policies and procedures that met industry standards for the safe and sanitary storage and sale of fresh peaches;

e. Failing to properly train its employees and agents to:  prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance;

f.   Failing to adequately supervise its employees and agents, including growers, to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance; and

g.   Other acts and omissions as revealed through investigation and discovery.

115.   As a direct and proximate result of Defendant Aldi's negligence, Plaintiff Allen suffered the damages and losses as set forth in this Complaint.

## COUNT VII
### Strict Product Liability – Plaintiff Dillard v. Defendant Aldi

116.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

117.   Defendant Aldi processed, marketed, and sold the contaminated peaches that caused Plaintiff Dillard's *Salmonella* infection.

118.   The peaches sold by Defendant Aldi and consumed by Plaintiff Dillard were contaminated with *Salmonella* and therefore defective when they left the control of Defendant Aldi.

119.   Plaintiff Dillard consumed the contaminated peaches as intended by Defendant Aldi.

120.   Plaintiff Dillard's consumption of the contaminated peaches caused her to become infected with the *Salmonella* bacteria and to become very ill.

121.   *Salmonella* is a dangerous and potentially deadly pathogen.

122.   Because *Salmonella* is colorless and odorless, consumers like Plaintiff Dillard have no way of detecting the contamination before consumption.

123.    The peaches sold by Defendant Aldi and subsequently purchased and consumed by Plaintiff Dillard were contaminated with *Salmonella* and therefore unreasonably dangerous to ordinary consumers for the intended use of the product.

124.    Defendant Aldi is therefore strictly liable to Plaintiff Dillard for the harm proximately caused by its production and sale of contaminated peaches.

125.    As a direct and proximate result of Defendant Aldi's production and sale of defectively manufactured peaches, Plaintiff Dillard suffered the damages and losses as set forth in this Complaint.

**COUNT VI**
**Negligence – Plaintiff Dillard v. Defendant Aldi**

126.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

127.    Defendant Aldi supplied, marketed, and sold the peaches purchased and consumed by Plaintiff Dillard.

128.    Defendant Aldi was negligent in and about its supplying, storage, marketing, and sale of the adulterated peaches that caused the *Salmonella* outbreak.

129.    Defendant Aldi owed a duty to the intended customers of its peach products, including Plaintiff Dillard, to ensure that its products were free of dangerous pathogens, including *Salmonella*.

130.    Defendant Aldi breached this duty by the following acts and omission, among others:

a.   Inadequately selecting screening, and monitoring the suppliers of peaches used in its products;

b.   Inadequately maintaining and monitoring the safety of its products, premises, equipment and employees;

c.   Failing to properly operate its distribution facilities in a safe, clean and sanitary manner;

d.   Failing to adopt, implement, follow and verify adequate food safety policies and procedures that met industry standards for the safe and sanitary storage and sale of fresh peaches;

e.   Failing to properly train its employees and agents to:  prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance;

f.   Failing to adequately supervise its employees and agents, including growers, to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance; and

g.   Other acts and omissions as revealed through investigation and discovery.

131.   As a direct and proximate result of Defendant Aldi's negligence, Plaintiff Dillard suffered the damages and losses as set forth in this Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows;

1.   For an award of compensatory damages, including damages against Defendants for medical and hospital expenses; physical and mental pain and suffering;

disability; and other damages according to proof at trial in excess of Seventy-Five Thousand Dollars ($75,000.00) for each Plaintiff;

     2.     For reasonable attorney fees and costs as permitted by law;

     3.     For pre- and post-judgment interest; and

     4.     For such further and other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs hereby demands a trial by jury on all triable issues.

**OFT LAW PLLC**

Dated: June 14, 2022        /s/Lindsay Lien Rinholen
                    Lindsay Lien Rinholen  (#0397560)
                    Ryan M. Osterholm (#0390152)
                    730 2nd Ave S. Suite 810
                    Minneapolis, MN 55402
                    Phone: (888) 828-7087
                    Fax: 888-239-0559
                    ryan@oftlaw.com
                    lindsay@oftlaw.com

                    *ATTORNEYS FOR PLAINTIFF*